IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

DIAL HD, INC., a Georgia          *
corporation, and DONALD           *
BOWERS, individually and as       *
CEO of Dial HD, Inc.,             *
                                  *
          Plaintiffs,             *
                                  *
     v.                           *          CV 109-100
                                  *
CLEARONE COMMUNICATIONS,          *
INC.,                             *
                                  *
          Defendant.              *

---

**ORDER**

---

Presently pending before the Court are multiple motions filed by both Plaintiffs and Defendant. On September 3, 2009, Defendant filed a motion requesting that this Court dismiss Plaintiffs' complaint, or, in the alternative, transfer or stay the action. (Doc. no. 10.) Plaintiffs subsequently responded to Defendant's motion (doc. no. 14) and submitted, in conjunction with their response, a motion to amend their complaint by leave of court (doc. no. 15). A little over a week later, on September 28, 2009, Plaintiffs also filed a motion for declaratory judgment. (Doc. no. 21.) The time for filing responses to all of these motions has expired, and all motions are ripe for consideration.

# I. BACKGROUND

## A. The Utah Proceedings Leading Up to the Present Action

On November 5, 2008, Plaintiff Donald Bowers' son, Lonny Bowers, along with several other defendants, were tried before a jury in a Utah district court and found to have willfully and maliciously misappropriated ClearOne's trade secrets. (Doc. no. 10, Ex. 3.) On April 8, 2009, the Utah court entered a permanent injunction against the defendants in that action, and those acting in concert with defendants, prohibiting, among other things, the continued use of the ClearOne trade secrets that the jury found were willfully and maliciously misappropriated. (Doc. no. 10, Ex. 6.)

In the Utah court, on July 16, 2009, ClearOne filed an expedited motion for order to enforce permanent injunction and a request for an immediate order allowing discovery and setting a hearing. (Doc. no. 10, Ex. 8.) In this motion, ClearOne alleged that the defendants in the Utah action had enlisted the help of conspirators in a scheme to escape the jury's verdict. (Id. at 3.) Among these alleged "co-conspirators" were Dial HD, Inc. and Donald Bowers. (Id. at 2-3.) ClearOne alleged that Dial HD was making use of the same trade secrets and related technology that were the subject of the Utah court's permanent injunction; further, ClearOne alleged that Donald Bowers had conspired and

2

transferred, hidden, and claimed to destroy, assets that the Utah court had previously ordered to be preserved. (Id. at 2.)

The next day, the Utah court issued an order directed at, among others, "DialHD Georgia" and Donald Bowers. (Doc. no. 10, Ex. 9 at 1.) The order directed these parties to appear before the court at 9:30 a.m. on July 31, 2009, either in person or by telephone,[1] to show cause why they should not be held in contempt based upon the conduct described in ClearOne's motion. (Id. at 2-3.) The order also informed these parties that the purpose of the hearing was to receive evidence and determine whether ClearOne could establish, by a preponderance of the evidence, that previous orders had been violated by the parties; the Utah court stated that if ClearOne was able to satisfy its burden, the court would consider expanding the permanent injunction. (Id. at 2.)

Based upon what was presented at the hearing, the Utah court ultimately issued a temporary restraining order (the

---

[1] The parties were informed that if they chose to appear by telephone, that choice would "significantly and negatively impact their ability to present a defense." (Doc. no. 10, Ex. 9 at 2.) The Utah court stated in the order that failure to appear in person would preclude any party from offering testimony, offering witnesses, or cross-examining witnesses. (Id. at 3.) However, the court noted that parties appearing by telephone would be permitted to listen and make argument on their own behalf. (Id.) The Utah court also made known that it would not permit individuals to advance arguments on behalf of corporate entities, because such entities must be represented by a licensed attorney who must make a formal appearance in the case. (Id.) According to the Utah court's order, issued after the hearing, Donald Bowers appeared by telephone and Dial HD, Inc. was unrepresented at the hearing. (Doc. no. 10, Ex. 10 at 2.)

"TRO"). (Doc. no. 10, Ex. 10.) The TRO directed Dial HD, Inc. and Donald Bowers to, among other things, refrain from transferring, encumbering, pledging, alienating, or trying to dispose of or hide any Dial HD, Inc. assets until further order of the Court. (Id. at 4.)

**B.    The Allegations Set Forth in the Complaint and the Amended Complaint**

On July 30, 2009, the day before the hearing that provided the basis for the granting of the TRO in the Utah action, Plaintiffs Dial HD, Inc. ("Dial HD"), a Georgia corporation, and Donald Bowers, individually and as CEO of Dial HD, Inc., filed suit against Defendant ClearOne Communications, Inc. ("ClearOne") in Georgia, in the Superior Court of Columbia County. (Doc. no. 1 at 7.) Defendant, on August 27, 2009, removed the case to this Court pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332(a) based upon the diversity of citizenship between the parties and an amount in controversy that exceeded seventy-five thousand dollars ($75,000.00).

In their original complaint, Plaintiffs alleged that, on several occasions, Defendant made contact with would-be clients and joint venture partners of Plaintiffs—some of which are specifically identified in the complaint—and dissuaded them from doing business with Plaintiffs by

alleging that Plaintiffs were subject to the April 8, 2009 injunction issued by the Utah court. (Compl. ¶¶ 7-10.) Based in large part upon these factual allegations, Plaintiffs asserted claims for tortious interference with business relations and abusive litigation. (Id. ¶¶ 14-25.) Plaintiffs also alleged that, through Defendant's contact with would-be clients and joint venture partners, Defendant committed acts of theft by extortion, which, according to Plaintiffs, constituted "a pattern of racketeering activity," as that is defined under O.C.G.A. § 16-14-3 of the Georgia Racketeer Influenced and Corrupt Organizations Act ("RICO") (Id. ¶¶ 26-31.)

As stated above, Plaintiffs filed a motion to amend their complaint on September 18, 2009. (Doc. no. 15.) Plaintiffs' amended complaint differs substantially from the original due to the addition of several new claims and the withdrawal of Plaintiffs' abusive litigation claim.[2] Plaintiffs' amended complaint reflects, as already described above, that a hearing was held in a separate action in Utah regarding ClearOne's expedited motion for an order to enforce permanent injunction and for contempt. (Am. Compl. ¶¶ 7-9.) According to Plaintiffs, during the course of that hearing, Defendant ClearOne "proffered evidence that had been

---

[2] Plaintiffs have also withdrawn a substantial amount of the factual allegations that appeared in their original complaint.

5

unlawfully obtained from Plaintiff Donald Bowers by way of a burglary . . . and proffered false testimony by way of its expert witness." (Id. ¶ 10.) Plaintiffs assert that the false statements made by Defendant's expert during the Utah hearing and the illegally obtained exhibits were instrumental in Defendant's obtainment of the TRO. (Id. ¶ 16.)

According to Plaintiffs, between July 1, 2009, and July 31, 2009, Defendant, by and through its agents and/or employees, burglarized Plaintiff Donald Bowers' office, located at 4141-C Columbia Road in Martinez, Georgia. (Id. ¶ 21.) Plaintiffs allege that, as a result of this burglary, Defendant obtained confidential payroll and accounting information that it later presented at the July 31, 2009 Utah hearing. (Id. ¶ 22.)

Attached to Plaintiffs' amended complaint is a police report dated August 1, 2009, within which Plaintiff Bowers is reported stating that his son, a named defendant in the Utah proceedings, emailed him a copy of the documents used by ClearOne at the July 31, 2009 hearing. (Doc. no. 15, Ex. 2 at 16.) According to Plaintiff Bowers, he immediately recognized that "there was no way that [ClearOne] in Utah could have [had] the documents [presented at the hearing] unless they had access to his office." (Id.) He subsequently went to his office in Martinez, Georgia, and

found the back window unsecured and the screen removed. (Id.) Plaintiff Bowers asserts in the police report that the intruders must have broken in and made copies because the originals remained in his office. (Id.) Plaintiffs assert that, at the time of the burglary, the responsible party or parties also gained access to confidential computer files and other electronically stored data. (Am. Compl. ¶ 25.) Based upon these facts, Plaintiffs allege that Defendant committed burglary, deprived Plaintiff Bowers of his property in contravention of O.C.G.A. § 51-10-1, and interfered with his right of possession within the meaning of O.C.G.A. § 51-10-2. (Id. ¶ 28.) Plaintiffs also allege that, based upon the above facts, Defendant committed trespass to personalty, within the meaning of O.C.G.A. § 51-10-3, and committed computer trespass and computer invasion of privacy, in violation of O.C.G.A. § 16-9-93. (Id. ¶¶ 29-35.)

In addition to the above allegations, Plaintiffs also allege in their amended complaint that, on several occasions, Defendant has made contact with would-be clients and joint venture partners of Plaintiffs and "dissuaded them from doing business with Plaintiffs, alleging that Plaintiffs were subject to the April 8, 2009 injunction." (Id. ¶ 17.) Plaintiffs also contend that Defendant served the TRO, obtained through "numerous wrongful acts," on AOL, Tandberg,

CCR, LLP, Vision Point, LLC, Lucid Corporation, and Google. (Id. ¶¶ 18 & 47.)

Finally, Plaintiffs allege that, based upon the underlying acts described above, Defendant has deprived Plaintiffs of the ability to conduct business in the marketplace and prevented Plaintiffs from making use of lawful business opportunities through a pattern of racketeering activity. (Id. ¶ 43.) The criminal predicate acts Plaintiffs cite in support of their RICO claim include burglary, suborning perjury, conspiracy, and theft by extortion. (Id. ¶¶ 37-41.) Plaintiffs contend that in light of these acts, they are entitled to civil remedies pursuant to O.C.G.A. § 16-14-16. (Id. ¶ 44.)

## II. MOTION TO AMEND COMPLAINT BY LEAVE OF COURT

On September 18, 2009, after Defendant filed its motion to dismiss, Plaintiffs requested leave to amend their complaint. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiffs may amend as a matter of right,[3] and, as a consequence, their motion to amend the complaint (doc. no. 15) is **MOOT**. Plaintiffs' amended complaint shall be deemed filed as of the date they filed their motion to

---

[3] An answer has yet to be filed in this case. Further, Plaintiffs filed their motion to amend approximately two weeks after Defendant filed its motion to dismiss.

amend.   Accordingly, the Court shall consider the other pending motions in light of Plaintiffs' amended complaint.

### III. MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER OR STAY

On September 3, 2009, Defendant filed a motion to dismiss or, in the alternative, a motion to transfer or stay this action.   (Doc. no. 10.)   In its motion, Defendant initially argues that Plaintiffs' complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim upon which relief can be granted.[4]   (Id. at 5.)   Alternatively, Defendant argues that the Court should dismiss the complaint in deference to the Utah court's jurisdiction over the same issues.   (Id. at 19.)   In support of this basis for dismissal, Defendant cites the first-to-file rule and the principle of federal comity. Defendant also contends that the case should be dismissed based upon the similarity and substantial overlap with the Utah proceedings.   (Id. at 21.)   In the event that this Court were to decide not to dismiss this case outright, Defendant requests that the Court either transfer this case to the District of Utah or stay the action pending resolution of the

---

[4] Defendant reasserts this argument in its reply brief with regard to Plaintiffs' amended complaint.   (Doc. no. 22.)

Utah proceedings. (Id. at 23-25.) The issues raised by
Defendant are addressed in full below.

    **A.   Motion to Dismiss, Transfer, or Stay the Action in
Deference to the Utah Court's Jurisdiction over the
Same Issues—The First-to-File Rule and Federal
Comity**

"Generally, when parties have filed competing or
parallel litigations in separate federal courts, the court in
which the case was first filed should hear the case." <u>Kate
Aspen, Inc. v. Fashioncraft-Excello, Inc.</u>, 370 F. Supp. 2d
1333, 1338 (N.D. Ga. 2005). Stated somewhat differently,
"[w]here two actions involving _overlapping issues and parties_
are pending in two federal courts, there is a strong
presumption across the federal circuits that favors the forum
of the first-filed suit under the first-filed rule." <u>Manuel
v. Convergys Corp.</u>, 430 F.3d 1132, 1135 (11th Cir. 2005)
(emphasis added). "[This] rule rests on principles of comity
and sound judicial administration and serves to maximize
judicial economy and minimize embossing inconsistencies by
prophylactically refusing to hear a case raising issues that
might substantially duplicate those raised by a case _pending_
in another court." <u>Merswin v. Williams Cos., Inc.</u>, No. 1:08-
cv-2177, 2009 WL 249340, at *8 (N.D. Ga. Jan. 30, 2009)
(citation omitted) (emphasis in original). Typically, "[i]n
determining whether actions are duplicative and the first-to-

file rule applies, courts consider three factors: (1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake." United States v. 22.58 Acres of Land, More, or Less Situated in Montgomery Cnty., Ala., No. 2:08-cv-180, 2010 WL 431254, at *5 (M.D. Ala. Feb. 3, 2010).

Defendant fails to persuade the Court that a complete dismissal, transfer, or stay, based upon the first-to-file rule, is appropriate here.[5] Plaintiffs in this case are not, and never have been, a *named* party in the Utah proceedings. Furthermore, the claims and issues related to this case substantially differ from those in the Utah action. For example, the complaint filed by ClearOne in Utah asserted claims regarding the theft and misappropriation of trade secrets. (Doc. no. 10, Ex. 2 at 2.) Here, Plaintiffs are asserting Georgia-based statutory claims involving the subornation of perjury, trespass, computer theft, and tortious interference with business relations. (Doc. no. 15, Ex. 2.) These claims and the specific issues involved in

---

[5] This is assuming that the motion is even properly before this Court, an issue never raised by either party. There is at least some persuasive authority indicating that, if this is in fact a second-filed case, the court where the case was first-filed should decide whether the first-filed rule applies and whether "compelling circumstances" warrant transfer of the first-filed case to the second court for consolidation. Kate-Aspen, 370 F. Supp. 2d at 1338. But see, e.g., Merswin, 2009 WL 249340, at *3 (declining request for transfer to court where case was first-filed); 22.58 Acres, 2010 WL 431254, at *5 ("If the second-filed court invokes the rule, the court can either stay the second-filed action pending the outcome of the first-filed suit or transfer the second-filed action to the court of the first-filed action.").

this case, while somewhat related to the Utah proceedings because they allegedly arise from ClearOne's improper actions performed in connection with those proceedings, are largely independent and distinct.[6] The Court recognizes that Plaintiffs have been involved in the Utah proceedings and have also been the subject of multiple orders related to those proceedings, but the Court fails to see how this action could be considered a second-filed case. Moreover, even if it were considered a second-filed case, the Court is unable to find that such substantial overlap exists between this case and the Utah case that the present one should be dismissed in its entirety, stayed, or transferred to Utah pursuant to the first-to-file rule. See Peter Brasseler Holdings, L.P. v. Gebr. Brasseler & Co., No. 4:07-cv-025, 2007 WL 1500296, at *3 (S.D. Ga. May 21, 2007) (finding that because claims in second-filed action did not "arise from the

---

[6] Here, Plaintiffs have not directly attacked or asked for a ruling regarding any specific order of the Utah Court, as Defendant suggests. (See Doc. no. 22 at 21 ("Thus, if Plaintiffs believe the Utah Court's TRO was erroneous, then their relief lies with the Utah Court or in appealing the ruling to the Tenth Circuit – not filing a separate lawsuit in another jurisdiction.")) Rather, Plaintiffs allege that Defendant engaged in illegal conduct in relation to, but largely outside, those proceedings.
To the extent Plaintiffs may wish to use this case to rehash issues previously litigated in Utah or to obtain materials potentially relevant to the Utah proceedings, this will not be allowed. The Court is acutely aware of these proceedings and will pay particular attention to the progression of this case in order to ensure that each party's focus, at all times, remains on the narrow issues presented here. Furthermore, Plaintiffs are hereby warned that this Court will not tolerate any retaliatory conduct related to unfavorable decisions in other jurisdictions. If it becomes clear to the Court that Defendant is correct and this case has been brought in bad faith, the Court will not hesitate to take appropriate action, including, but not limited to, imposing sanctions.

same transaction or occurrence" as those of the first-filed action there was insufficient duplication to apply first-to-file rule).

Furthermore, Defendant has failed to cite and the Court has been unable to find any Eleventh Circuit case approving of a transfer, stay, or dismissal based upon the first-to-file rule or comity that involved parties not named in the first-filed action *and* substantially different issues based upon different sets of facts only tangentially related. The vast majority of cases in which a party has invoked the first-to-file rule and successfully moved a court to transfer or dismiss an action outright, at least within this Circuit, involved much clearer instances of second-filed cases where there was substantial actual and potential overlap of parties and issues. See, e.g., Woo v. Nike, Inc., No. 1:10-cv-1018, 2010 WL 1565526 (N.D. Ga. Apr. 19, 2010); Marietta Drapery & Window Coverings Co. v. N. River Ins. Co., 486 F. Supp. 2d 1366, 1367 (N.D. Ga. 2007); Tiber Labs., LLC v. Cypress Pharms., Inc., No. 2:07-cv-0014, 2007 WL 3216625 (N.D. Ga. May 11, 2007); Supreme Int'l Corp. v. Anheuser-Busch, Inc., 972 F. Supp. 604 (S.D. Fla. 1997).

Thus, Defendant's motion to dismiss, or, in the alternative, to transfer or stay this action, *based solely upon the first-to-file rule* is **DENIED**.

**B. Motion to Transfer for the Convenience of Parties and Witnesses, in the Interest of Justice—28 U.S.C. § 1404(a)[7]**

In addition to arguing that the first-to-file rule requires a transfer in this case, Defendant has also moved for the Court to transfer this case pursuant to 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) reads as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

"The question of whether to transfer venue is a two-pronged inquiry. First, the alternative venue must be one in which the action could originally have been brought by the plaintiff. The second prong requires courts to balance private and public factors to determine if transfer is justified." Mason v. Smithkline Beecham Clinical Labs., 146 F. Supp. 2d 1355, 1359 (S.D. Fla. 2001). In Manuel, 430 F.3d at 1135 n.1, the Eleventh Circuit set forth the factors that should be considered in a § 1404(a) analysis. The applicable factors are as follows:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease

---

[7] Defendant sets forth its specific arguments regarding transfer exclusively in its initial motion to dismiss, filed prior to Plaintiffs' motion to amend the complaint. (Doc. no. 10, Ex. 1 at 23-25.) While Defendant reasserts its desire to have this case transferred in its reply brief—filed after Plaintiffs' motion to amend—Defendant provides no specific arguments addressing Plaintiffs' amended complaint.

of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

Id. While the Court has discretion to transfer an action to another forum based upon these factors, the case for a transfer must be relatively compelling. "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996). "[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient." In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989).

Defendant—without citing any binding Eleventh Circuit precedent or federal statute—argues that the traditional 1404(a) analysis, as defined by the factors set forth above, is "somewhat inapplicable" due to the exceptional posture of this case. (Doc. no. 10, Ex. 1 at 24.) According to Defendant, because this is a case "on the same issues already adjudicated in another forum" and because the Utah court has abundant experience addressing these issues, this Court should transfer the case to Utah. (Id.) To the extent

Defendant is arguing that a transfer is appropriate in this instance based solely upon comity and the first-to-file rule, that argument has been sufficiently considered and disposed of above.

In regard to a § 1404(a) transfer, Defendant has failed to convince the Court that a consideration of the § 1404(a) factors favors a transfer in this instance. Despite having the burden of establishing the convenience of a transfer in its motion, Defendant only addresses two of the nine § 1404(a) factors that are generally considered by Eleventh Circuit courts.[8] Defendant asserts that the location of relevant documents and relative ease of access to sources of proof, in addition to the locus of operative facts, "overwhelmingly support transfer to Utah if the case is not summarily dismissed." (Id.) In light of Plaintiffs' amended complaint, this argument is significantly less persuasive than it might have been at the time Defendant's motion was filed. Plaintiffs have since dropped their abusive litigation claim based upon the proceedings in Utah and have added claims arising from allegations of an unlawful entry into Plaintiff Bowers' place of business in Martinez, Georgia. After considering the new facts asserted in

---

[8] Of note, the two factors considered by Defendant are addressed exclusively in the context of Plaintiffs' original complaint. Despite asserting that this Court should transfer this case in its reply brief (doc. no. 22 at 35), Defendant makes no direct reference to any § 1404(a) factors.

Plaintiffs' complaint, the Court is unable to agree with Defendant that the locus of operative facts and the ease of access to sources of proof "overwhelmingly support transfer."

Rather, the "locus of operative facts" and "the location of relevant documents and the relative convenience of the parties" favor neither party. Regarding the convenience of parties, either forum would be equally inconvenient. Plaintiff Donald Bowers is a resident of Columbia County, Georgia, while Defendant is a for-profit business entity authorized to conduct business in the State of Utah; whether this case was transferred or not, at least one party would have to travel to the benefit of another.

As for the other remaining elements of the two factors cited by Defendant, they also do not strongly favor or disfavor transfer. As stated above, Plaintiffs claim that Defendant, by and through its agents and/or employees, unlawfully entered Plaintiff Donald Bowers' office in Martinez, Georgia, and obtained confidential payroll and accounting information. (Am. Compl. ¶¶ 21-22.) Plaintiffs also allege that Defendant, or its employee or agent, gained unauthorized access to Plaintiffs' computer or computer network in Martinez, Georgia, for the purpose of taking or appropriating confidential documents. (Id. ¶ 32.) These claims—which represent approximately half of all of

Plaintiffs' claims in this action—arise almost entirely from acts that allegedly occurred *in Georgia*. On the other hand, Plaintiffs claim that Defendant suborned perjury in relation to the Utah TRO hearing—a basis for Plaintiffs' RICO claim—is founded upon acts that allegedly occurred in Utah. Lastly, with regard to Plaintiffs' allegations that Defendant tortiously interfered with business relations and committed theft by extortion (another predicate act under RICO), it is not clear from the record where the alleged acts occurred nor is it clear where potential sources of proof related to this claim lie. Nevertheless, at a minimum, the Court recognizes that the harms alleged in relation to these claims would have been realized in Georgia, assuming any harm occurred at all.

Taking into account the facts and claims asserted in the amended complaint, even if the Court were to exclusively consider the two factors addressed by Defendant in its briefs, the Court would still find a transfer unwarranted in this case. At best, the two factors identified by Defendant favor neither party, and a transfer would simply result in the trading of one inconvenient forum for another. Furthermore, at least two of the remaining seven factors—this forum's familiarity with the governing law and the weight accorded Plaintiffs' choice of forum—*strongly* favor denying Defendant's motion. The remaining factors are not directly

addressed by Defendant in their motion to transfer; nevertheless, these factors, when applied to the facts of the case, do not "clearly outweigh" Plaintiffs' choice of forum. See Robinson, 74 F.3d at 260. Ultimately, Defendant has failed to carry its burden to show that the Utah forum would be more convenient. Accordingly, Defendant's motion to transfer pursuant to § 1404(a) is **DENIED**.

### C. Dismissal Based Upon *Res Judicata,* Issue Preclusion, and Estoppel

For the first time, in its reply brief, Defendant argues in a conclusory fashion that principles of *res judicata*, estoppel, and issue preclusion "require[] that this Court decline to consider or exercise jurisdiction over this [entire] action." (Doc. no. 22 at 21.) Beyond Plaintiffs' perjury claim, briefly addressed in a separate section of Defendant's brief,[9] Defendant provides no particularized explanation as to why or how these doctrines bar Plaintiffs' individual claims in this particular case.[10] Further,

---

[9] The application of *res judicata* and estoppel to Plaintiffs' perjury claim is equally insubstantial and conclusory in terms of the authority cited in support thereof and the application of the law to the facts of the case. The only additional information provided regarding this claim is Defendant's assertion that similar allegations were raised in the prior Utah action. Nevertheless, Defendant still fails to argue or show the Court—beyond conclusory assertions—how this single fact bars Plaintiffs' claim. For the reasons set forth herein and those cited in the above-section, Defendant's motion to dismiss Plaintiffs' perjury claim, based upon *res judicata* and estoppel, is also **DENIED**.

[10] Notably, Defendant fails to explain the applicability of *res judicata* or estoppel to Plaintiffs' claims regarding the alleged break-in.

Defendant's citation to authority is conclusory and insubstantial. Defendant's use of legal authority, at least with regard to the issues of *res judicata*, estoppel and issue preclusion, is limited to the establishment of skeletal policy outlines of these principles. (<u>See, e.g.</u>, doc. no. 22 at 18 ("[The doctrines of issue preclusion, estoppel, and *res judicata*] serve to 'protect[] litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" (citation omitted)).) These general citations are supplemented with largely unsubstantiated assertions that Plaintiffs are barred from bringing the claims asserted in their amended complaint.

Ultimately, Defendant fails to meet its burden to justify dismissal on these grounds. For instance, Defendant fails to identify what state or federal case law should be used to determine the preclusive effect of the prior Utah judgment. Furthermore, Defendant never explicitly sets forth the specific elements of *res judicata* or collateral estoppel that Defendant believes apply in this case, let alone does Defendant apply any of the applicable elements to the facts of this case. The Court is unwilling to make Defendant's case for dismissal merely because Defendant has recited facts from a prior related proceeding and stated the words "*res*

*judicata,"* "issue preclusion," and "estoppel." "Judges are not like pigs, hunting for truffles buried in briefs." United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991). Defendant, not the Court, bears the burden to show that the doctrines it has invoked apply, and Defendant has failed to do so here. Accordingly, Defendant's motion to dismiss based upon estoppel, issue preclusion, and/or *res judicata* is **DENIED**.

### D. Motion to Dismiss for Failure to State a Claim upon Which Relief Can Be Granted

Defendant has asserted, both in support of its original motion to dismiss and in its reply brief, that Plaintiffs' entire amended complaint should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failing to state a claim upon which relief can be granted. (Doc. no. 10 at 1; Doc. no. 22 at 21.) Each claim asserted in the amended complaint is addressed in turn below.

#### 1. Motion to Dismiss Standard

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). A motion to dismiss for failure to state a claim based upon Rule 12(b)(6)

does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002). Therefore, a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949-50 (2009).

In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. (internal citations and punctuation omitted). The Court further stated that while there was no "probability requirement at the pleading stage," id. at 556, "something

beyond . . . mere possibility . . . must be alleged." Id. at 558 (citing Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)). Therefore, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 545, and sufficient "to state a claim for relief that is plausible on its face." Id. at 547.

## 2. Factual Allegations Related Exclusively to the Alleged Burglary

Defendant asserts that the facts related to the alleged burglary are conclusory and implausible on their face, such that any claims related to these factual allegations (i.e. deprivation of possession, mere possession, trespass, etc.) should be dismissed outright. (Doc. no. 22 at 13-17.) To the extent that Defendant is requesting that the Court find that the factual allegations related to the alleged burglary provide an insufficient basis for all claims related to the "burglary allegations," the Court denies Defendant's request.[11]

Plaintiffs assert in their complaint that between July 1 and July 31, 2009, Defendant, by and through its agents and/or employees, burglarized Plaintiff Donald Bowers' office, located at 4141-C Columbia Road in Martinez, Georgia.

---

[11] It appears that Defendant, rather than attacking a specific claim, is attacking the general facts underlying Plaintiffs' claims related to the alleged burglary. The Court addresses Defendant's argument concerning the general facts related to the burglary in this section; however, the Court will also consider Defendant's arguments regarding each individual claim in separate sections below.

(Am. Compl. ¶ 21.) Plaintiffs contend that, as a result of this burglary, Defendant obtained confidential accounting information and information related to Plaintiffs' employee payroll, which was introduced at a July 31, 2009 hearing before a Utah district court. (Id. ¶¶ 22-23.) Plaintiffs also allege that, on the day of the burglary, Defendant's employee/agent gained unauthorized access to Plaintiffs' computer or computer network for the purpose of taking or appropriating confidential documents, records, correspondences, and other electronically stored information belonging to Plaintiffs. (Id. ¶ 32.)

Plaintiffs have also attached a police report to their amended complaint, within which it is alleged that Defendant could not have obtained the confidential documents presented at the Utah hearing without, at some point, obtaining access to Plaintiff Bowers' office. (Doc. no. 15, Ex. 2 at 16.) According to the police report, after being notified by his son that Defendant presented Plaintiffs' confidential documents at the Utah hearing, Plaintiff Bowers went to his office in Martinez, Georgia, and found the back window unsecured and the screen removed. (Id.) Plaintiff Bowers alleges in the report that the perpetrators broke into his office and made copies; he also states that the original documents remain in his possession. (Id.)

Defendant argues that Plaintiffs' allegations regarding the alleged break-in are "self-serving" and "conclusory." (Doc. no. 22 at 15.) According to Defendant, "one cannot reasonably infer that a theft took place," based upon the facts asserted in the amended complaint. (Id.) More specifically, Defendant argues that, despite Plaintiffs' allegations to the contrary (see doc. no. 15, Ex. 2 at 16 ("Mr. Bowers said there is no way that someone in Utah could have the documents unless they had access to his office.")), "there are many ways ClearOne could have come into possession of [the confidential documents] - all of them perfectly legal." (Doc. no. 22 at 16.) Defendant also contends that Plaintiffs' allegations that a back office window at Dial HD was ajar and a screen was removed do not amount to burglary and computer theft. (Id.) In support thereof, Defendant points out that Plaintiffs are unable to name who opened the window and removed the screen. (Id. at 16-17.)

This is not a case in which a plaintiff has asserted "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft, 129 S. Ct. at 1949. Rather, this is a case in which Plaintiffs have set forth specific facts that, when accepted as true and considered together, plausibly give rise to at least some entitlement to relief, assuming the elements of Plaintiffs'

individual claims are plausibly supported by these facts—an issue that will be addressed fully below. The Court cannot say that these facts, by themselves, warrant dismissal of all claims related to the alleged burglary. Further, at this stage of the case, the Court is unable to question the veracity of Plaintiffs' allegations. See id. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity . . . ."); Twombly, 550 U.S. at 555 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'").

### 3. Plaintiffs' Individual Claims

#### i. Georgia Statutory Interference with Property (O.C.G.A. §§ 51-10-1 to 51-10-3)

In its reply brief, Defendant argues that, because Plaintiffs have not alleged that they have been deprived of the possession of any property, Plaintiffs have failed to state a claim for conversion and/or statutory interference with personal property.[12] To state a claim for conversion under Georgia law, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." Washington v. Harrison, 299 Ga. App. 335, 338

---

[12] Plaintiffs provide no response to this contention made by Defendant.

26

(2010). However, in cases such as this one, where the defendant allegedly comes into possession of the property unlawfully, demand and refusal is not required. Williams v. Nat'l Auto Sales, 287 Ga. App. 283, 285-86 (2007).

Defendant is correct in asserting that Plaintiffs' complaint does not specifically assert that they have been deprived of the possession of any *physical* property. Moreover, Plaintiffs have failed to provide facts showing that Defendant has actual possession of any physical property. The facts here resemble those presented to the Georgia Court of Appeals in J & C Ornamental Iron Co. v. Watkins, 114 Ga. App. 688, 690 (1966). In that case, the plaintiff alleged that one of the defendants, without authorization, gained access to the office of plaintiff's company president and then "proceeded to rummage through plaintiff's books, papers and records, making voluminous notes." Id. at 690. The court held that, because the plaintiff did not "allege that it was deprived of possession of its books and records or that the property was injured in any way," the petition did not state a cause of action for trespass to personalty, let alone conversion. Id. at 691. Similarly, here, Plaintiffs fail to assert that they were ever deprived of possession of any physical property or that their property was injured in any way by virtue of

Defendant's actions. "Typically, trespass to personal property involves a wrongful taking or detention of property, or damage to the property," Perrin v. City of Elberton, Ga., No. 3:03-cv-106, 2005 WL 1563530, at *13 (M.D. Ga. July 1, 2005), and no such allegation exists here, at least in relation to any *physical* property of Plaintiffs (see doc. no. 15, Ex. 2 at 16 ("Mr. Bowers said he has the original documents at his office. He said the unknown person(s) broke in and made copies.")).

The crux of Plaintiffs' complaint for statutory interference with personal property is that Defendant broke into Plaintiffs' office and stole confidential business *information*. In this regard, the Court finds Opteum Fin. Servs., LLC v. Keith Spain and Mkt. St. Mortg. Corp., 406 F. Supp. 2d 1378 (N.D. Ga. 2005), and PHA Lighting Design, Inc. v. Kosheluk, No. 1:08-cv-01208, 2010 WL 1328754 (N.D. Ga. Mar. 30, 2010), persuasive. In Opteum, for instance, plaintiff alleged that one of the defendants, a former loan officer of the plaintiff's, stole an original customer loan file from the plaintiff and, without authorization, made copies of other customer loan files, which he then took to a competing financial company. 406 F. Supp. 2d at 1379. The defendants filed a motion for judgment on the pleadings based

upon the fact that plaintiff's conversion claim was superseded by the Georgia Trade Secrets Act ("GTSA").[13]  Id.

The district court, in that case, found that the plaintiff's "claim[] for conversion [was] based on its right to possession of the loan files and defendants' intentional copying, taking, and misappropriating plaintiff's loan files," and was, thus, preempted by the GTSA.  Id. at 1381. The court held that the claim was preempted despite the plaintiff's contention that whether the information rose to the level of a trade secret was a disputed issue of fact. Id. at 1380.

In PHA Lighting, a case in which the plaintiff never asserted that the information at issue was a trade secret, the district court also found that the GTSA preempted the plaintiff's claim for statutory interference with personal property. 2010 WL 1328754, at *11.  In that case, the plaintiff had alleged that the defendant stole electronic copies of client lists and proposal and transmittal forms. Id. at *2.  The court explained in its opinion that the proposal forms were letters given to clients that laid out the scope of anticipated work as well as the price, deliverables, and general responsibilities under a design

---

[13] "The GTSA preserves a single tort cause of action under state law for misappropriation and eliminates other state causes of action founded on allegations of trade secret misappropriation." Opteum, 406 F. Supp. 2d at 1380 (citing O.C.G.A. § 10-1-767).

contract. Id. at *8. Transmittal forms were defined as fax cover letters informing the recipient that certain documents were enclosed. Id.

The PHA Lighting court found that, although the plaintiff had admitted the information at issue was not protected by the GTSA because the information did not rise to the level of a trade secret, the information allegedly misappropriated by the defendant still came within the types of intangible information covered by the GTSA and, thus, its statutory interference claim was preempted. Id. at *11; see also Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. Oct. 1, 2007) ("If a plaintiff could alternatively recover for misappropriation of non-proprietary information or misappropriation of unguarded proprietary information, the legislative judgment contained in the GTSA-that such information should otherwise flow freely in the public domain-would be subverted.") The court subsequently stated, "Allowing Plaintiff to bring a claim for . . . conversion based on [Defendant's] conduct would subvert the purpose of the GTSA because Plaintiff would not have to prove that the information taken by Defendant was a trade secret, yet could still recover for misappropriation of intangible, proprietary information." 2010 WL 1328754, at *11.

Under Georgia law, a trade secret is defined as follows:

> Trade secret means information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, *financial data*, financial plans, product plans, or a list of actual or potential customers or suppliers *which is not commonly known by or available to the public* and which information:
>
> (A) Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761 (emphasis added).

Here, the only property allegedly "converted" by Defendant was intangible information.[14] (See Am. Compl. ¶ 22 ("By way of the aforesaid burglary, Defendant obtained confidential information related to Plaintiff's employee payroll and Dial HD's accounting information.")) By Plaintiffs' own terms, the information allegedly converted "come[s] within the types of intangible information that may be protected as trade secrets." PHA Lighting, 2010 WL 1328754, at *11. Thus, the GTSA preempts Plaintiffs'

---

[14] Even if the copies allegedly made were tangible, they would have "little value apart from the information contained therein." PHA Lighting, 2010 WL 1328754, at *11 (citation omitted). In Opteum, the plaintiff demanded the return of loan files, which the court found was "just another way of charging that defendants took the plaintiff's confidential information;" the district court found that the plaintiff's conversion claim was still preempted. 406 F. Supp. 2d at 1381. In this case, Plaintiffs have not demanded the return of any tangible property nor have they asserted in their complaint that they have been deprived of the possession of any tangible property.

statutory interference claims and Defendant's motion to dismiss, at least in regard to these claims, is **GRANTED**.

> ii. *O.C.G.A. § 16-9-93: Computer Theft, Trespass, Invasion of Privacy*

Georgia Code § 16-9-93 is a criminal statute that provides civil liability and civil remedies for the crimes of computer theft, trespass, invasion of privacy, forgery, and password disclosure. O.C.G.A. § 16-9-93. Under the statute, computer theft, computer trespass, and computer invasion of privacy are defined as follows:

> (a) *Computer Theft.* Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of: (1) Taking or appropriating any property of another, whether or not with the intention of depriving the owner of possession; (2) Obtaining property by any deceitful means or artful practice; or (3) Converting property to such person's use in violation of an agreement or other known legal obligation to make a specified application or disposition of such property.

> (b) *Computer Trespass.* Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of: (1) Deleting or in any way removing, either temporarily or permanently, any computer program or data from a computer or computer network; (2) Obstructing, interrupting, or in any way interfering with the use of a computer program or data; or (3) Altering, damaging, or in any way causing the malfunction of a computer, computer network, or computer program, regardless of how long the alteration, damage, or malfunction persists shall be guilty of the crime of computer trespass.

> (c) *Computer Invasion of Privacy.* Any person who uses a computer or computer network with the intention of examining any employment, medical,

> salary, credit, or any other financial or personal
> data relating to any other person with knowledge
> that such examination is without authority shall be
> guilty of the crime of computer invasion of privacy.

Id.

In a single page within its reply brief, Defendant asserts that Plaintiffs' "conclusory allegations" fail to state a claim for computer theft, trespass, and invasion of privacy. (Doc. no. 22 at 26.) In support thereof, Defendant provides only conclusory assertions and no legal authority. For instance, Defendant contends that there are no facts alleged in the amended complaint to support that ClearOne ever had access to Plaintiffs' computer or computer network. (Id.) To the contrary, Plaintiffs not only expressly allege that Defendant "gained unauthorized access to Plaintiff's computer or computer network," but one could reasonably infer that Defendant had access based upon the allegations that Defendant's agent(s), acting at the direction of Defendant, unlawfully entered Plaintiff Donald Bowers' workplace. (Am. Compl. ¶¶ 21 & 37.) Presumably, at this time, Defendant, by and through its agent(s), would have had access to Plaintiff's computer or computer network. This reasonable inference is supported by Plaintiffs' contention that Defendant presented information at the July 31, 2009 Utah hearing that could have only been obtained by someone who had access to Plaintiff Bowers' office. (Doc. no. 15, Ex. 2 at

16.) While Plaintiffs do not state explicitly that this information was obtained from Bowers' computer system, this fact can be reasonably inferred based upon the allegations set forth in the complaint.[15]

In sum, contrary to Defendant's conclusory assertion[16] that "there is <u>no</u> information to support <u>any</u> belief that a computer crime occurred" (doc. no. 22 at 26 (emphasis in original)),[17] Plaintiffs' complaint can be reasonably interpreted as asserting that Defendant, by and through an agent, obtained confidential accounting and payroll information by breaking into Plaintiff Bowers' office and

_____

[15] The amended complaint reads as follows: "Defendant obtained confidential information related to Plaintiff's employee payroll and Dial HD's accounting information." (Am. Compl. ¶ 22.) In the following paragraph, Plaintiffs allege that this stolen information was presented at the July 31, 2009 hearing before the Utah District Court. (<u>Id.</u> ¶ 23.) In subsequent paragraphs, Plaintiffs assert that "[o]n the day Defendant's employee/agent burglarized Plaintiff Donald Bowers' office, the aforesaid individual, on information and belief, gained unauthorized access to Plaintiff's computer or computer network for the purpose of taking or appropriating confidential documents, records, correspondences, and other electronically stored information belonging to Plaintiff." (<u>Id.</u> ¶ 32.) Based upon these allegations, one could reasonably infer that Defendant illegally attempted to access—and ultimately did access—Plaintiff's computer system for the purpose of obtaining information to use against Plaintiffs at the Utah hearing.

[16] As the party moving for dismissal for failure to state a claim, Defendant bears the burden to explain—with at least some minimal level of detail—and provide supporting authority showing why Plaintiffs' claims are subject to dismissal. <u>See</u> <u>Dyas v. City of Fairhope</u>, No. 08-0232, 2008 WL 3822218, at *2 (S.D. Ala. Aug. 13, 2008) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue, and the Court will not supply legal or analytical support the parties have declined to offer themselves." (citation omitted)).

[17] Defendant also argues that the fact that law enforcement have ignored Plaintiffs' complaint and have not charged ClearOne with any crime supports dismissal of Plaintiffs' claim. (Doc. no. 22 at 26.) Not only is the record devoid of any evidence showing whether or not ClearOne has been charged with a crime, but the Court could not even consider such evidence on a motion to dismiss.

illegally accessing Bowers' computer or computer network. The alleged facts can be construed to show that, in the process of illegally obtaining this information, Defendant attempted to, and did, examine financial and personal data contained on Plaintiff Bowers' computer and interfered with his computer network. Accordingly, Defendant's motion to dismiss Plaintiffs' claims for computer theft, computer trespass, and computer invasion of privacy is **DENIED**.

### iii. Tortious Interference with Business Relations

To establish a claim for tortious interference with actual or potential business relations under Georgia law, the following elements must be shown:

> (1) [I]mproper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc., 297 Ga. App. 28, 33 (2009) (citation omitted).

According to Plaintiffs, in regard to the first element of tortious interference, Defendant acted "improperly" through its actions leading up to the issuance of the August 5, 2009 TRO (i.e. breaking into Plaintiff Bowers' office and using documents seized during the course of the unlawful

35

entry, as well as suborning perjury to bolster its motion for injunctive relief). (Doc. no. 14 at 4.) Yet, while Plaintiffs may have alleged "improper actions," these alleged actions are too attenuated to sustain a claim for tortious interference with business relations. Plaintiffs do not allege that Defendant made misrepresentations or defamatory statements concerning Plaintiffs to a third party, causing the third party to discontinue or decide not to enter into a business relationship with Plaintiffs. Nor do Plaintiffs allege that Defendant illegally gained access to confidential documents and then presented those documents to third parties in an attempt to affect Plaintiffs' business relations with those parties. Rather, Plaintiffs assert that Defendant, by contacting third parties with regard to a court-ordered injunction that directly referenced Plaintiffs, engaged in tortious interference with business relations because Defendant acted improperly in obtaining evidence to support a temporary injunction.[18] (Doc. no. 14 at 4 ("Plaintiffs' Tortious Interference with Business Relations Claim . . .

---

[18] Plaintiffs also assert that, "[s]ince the issuance of the TRO, Defendant has on several occasions made contact with would-be clients and joint venture partners of Plaintiffs and dissuaded them from doing business with Plaintiffs, alleging that Plaintiffs were subject to the April 8, 2009 injunction." (Am. Compl. ¶ 17.) To allow this claim to go forward based upon these factual allegations—without a single allegation of a misrepresentation on the part of Defendant with regard to the April 8, 2009 injunction—would unduly restrict parties from attempting to enforce injunctions lawfully obtained. In addition, these facts, even taken as true, do not assert any "improper action" on the part of Defendant.

explicitly demonstrates that Defendant, through actions leading up to the issuance of the August 5, 2009, Temporary Restraining Order (breaking into Plaintiff Donald Bowers' office and using documents seized during the course of the unlawful entry as well as suborning perjury to bolster its motion for injunctive relief) engaged in improper conduct.")

Plaintiffs' claim for tortious interference is problematic because it relies upon actions substantially removed from the actual acts that allegedly affected Plaintiffs' business relations. Plaintiffs do not allege that Defendant's distribution of the TRO, in and of itself, was "improper," but rather allege in their complaint that Defendant engaged in "improper" acts while in pursuit of the TRO and the TRO was, therefore, "tainted."[19] (Am. Compl. ¶¶ 47-48.) Even accepting Plaintiffs' factual allegations as true, these underlying actions are too attenuated from the harm to Plaintiffs' business relations to support an actionable claim for tortious interference.[20] A decision on this claim would not only require a determination as to

[19] The Court finds it worth noting that nowhere in the amended complaint do Plaintiffs allege that Defendant's motion for temporary restraining order lacked just cause or amounted to abusive litigation—a claim that, although initially asserted, has since been withdrawn. Rather, Defendant attacks the methods by which evidence was gathered and presented in support of Defendant's motion.

[20] Furthermore, to permit such an action would allow parties to attack the evidence presented at any legitimate judicial proceeding that has an effect on potential, or actual, business relations, via a tortious interference claim. If Plaintiffs wish to attack the evidence presented in support of the injunction, the proper method is to directly take issue with the decision to consider the evidence by filing an appeal.

whether the granting of the TRO caused Plaintiffs' alleged injuries, but it would also inevitably require improper speculation as to the role the evidence played in the district judge's decision to grant the TRO.

Accordingly, Defendant's motion to dismiss regarding Plaintiffs' claim for tortious interference with business relations is **GRANTED**.

### iv. *State RICO Claim*

Based upon allegations of burglary, the subornation of perjury, conspiracy, violations of the Computer Systems Protection Act, and theft by extortion, Plaintiffs assert that Defendant has engaged in a pattern of racketeering activity within the meaning of Georgia Code § 16-14-3(8)(A). (Am. Compl. ¶¶ 31-35 & 42; Doc. no. 14 at 7.) Defendant contends in its motion to dismiss and its subsequently filed reply brief, that Plaintiffs' RICO claim fails, in part, because the complaint alleges no set of facts that ClearOne has engaged in a pattern of racketeering activity. (Doc. no. 10, Ex. 1 at 17; Doc. no. 22 at 30-31.)

The Georgia RICO Act reads, in part, as follows:

(a) It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

> (b) It is unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of · racketeering activity.
>
> (c) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section.

O.C.G.A. § 16-14-4. A "pattern of racketeering activity," "means engaging in at least two incidents of racketeering activity, which is defined as the commission of a crime in any of [40] specified categories of offenses [set forth in O.C.G.A. § 16-14-3(9)]." Smith v. Chemtura Corp., 297 Ga. App. 287, 291 (2009) (citation omitted).

In support of their RICO claim, Plaintiffs have asserted that Defendant has participated in a "pattern of racketeering activities" by violating the following statutes: O.C.G.A. §§ 16-7-1 (burglary), 16-10-20 (state perjury), 16-9-93 (various computer-related crimes), 16-4-8 (conspiracy), 16-8-16 (theft by extortion) and 18 U.S.C. § 1621 (federal perjury). At the outset, the Georgia RICO Act does not list Georgia Code § 16-4-8 (conspiracy to commit a crime) or 18 U.S.C. § 1621 (federal perjury) as a "racketeering activity" that can support a Georgia RICO claim, even when considered in conjunction with the federal statutes incorporated therein. See O.C.G.A. § 16-14-3(9). Furthermore, Georgia Code § 16-

10-20, which *is* listed as a predicate offense that may support a RICO claim, provides as follows:

> A person who knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device a material fact; makes a false, fictitious, or fraudulent statement or representation; or makes or uses any false writing or document, knowing the same to contain any false, fictitious, or fraudulent statement or entry, in any matter *within the jurisdiction of any department or agency of state government of any county, city, or other political subdivision of [the State of Georgia]* shall, upon conviction thereof, be punished by a fine of not more than $1,000.00 or by imprisonment for not less than one nor more than five years, or both.

O.C.G.A. § 16-10-20 (emphasis added).

However, Plaintiffs fail to establish in their complaint that Defendant has violated this code section. Plaintiffs assert that Defendant suborned perjury by directing a witness to knowingly proffer false statements and conceal facts while testifying under oath at a proceeding before the United States District Court, District of Utah, Central Division, regarding an injunction issued previously by said court. Plaintiffs have asserted no facts in their complaint giving this Court any reason to infer that the proceedings in Utah, regarding an injunction issued by the same Utah court, could possibly be considered "a matter within the jurisdiction" of any department or agency of Georgia.

Based upon the foregoing, the only predicate acts identified by Plaintiffs in their complaint that may

potentially support their RICO claim are Defendant's alleged violations of Georgia Code §§ 16-7-1 (burglary), 16-9-93 (various computer-related crimes), and 16-8-16 (theft by extortion). Regarding theft by extortion, Plaintiffs assert the following:

> By unlawfully interfering with Plaintiffs' business relationships and preventing them from conducting business with third parties by disseminating information tending to subject them to contempt or ridicule and to impair their business repute and by dissuading third parties who would have likely conducted business with Plaintiffs from doing so as a result of such actions (and likely persuading such third parties to do business with Defendant in Plaintiffs' stead), Defendant engaged in theft by extortion within the meaning of O.C.G.A. § 16-8-16(3) and (4).

(Am. Compl. ¶ 40.) As Defendant points out in its motion to dismiss and reply brief (Doc. no. 10, Ex. 1 at 15; Doc. no. 22 at 30), Plaintiffs have presented in their complaint and amended complaint a strained application of Georgia's theft by extortion statute. Pursuant to Georgia Code § 16-8-16(a), a person commits the offense of theft by extortion when

> he unlawfully obtains property of or from another person by threatening to . . . (3) Disseminate any information tending to subject any person to hatred, contempt, or ridicule or to impair his credit or business repute; (4) Take or withhold action as a public official or cause an official to take or withhold action . . . .

O.C.G.A. § 16-8-16. Plaintiffs' amended complaint fails to allege that Defendant ever made a threat of any kind. Furthermore, Plaintiffs have failed to assert any facts

showing that Defendant obtained any property of or from another by threatening to take any of the actions set forth in § 16-8-16(a).[21]     Lacking these essential elements, Plaintiffs' complaint fails to establish that Defendant committed the crime of theft by extortion.

The two remaining bases for Plaintiffs' RICO claim have been sufficiently pled.   As set forth above, Plaintiffs' complaint alleges that Defendant has potentially violated several provisions of the Georgia Computer Systems Protection Act.   See supra pp. 32-35.   Moreover, Plaintiffs' complaint sets forth the RICO predicate act of burglary.   Burglary is defined under Georgia Code § 16-7-1 as follows: "A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein he enters or remains within the dwelling house of another . . . or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof."   O.C.G.A. § 16-7-1.   Defendant argues that the facts underlying Plaintiffs' burglary claim are implausible on their face.   (Doc. no. 22

---

[21] To the extent that Plaintiffs are alleging that Defendant "obtained" Plaintiffs' business opportunities (see Am. Compl. ¶ 40 ("[Defendant] likely persuad[ed] . . . third parties to do business with Defendant in Plaintiffs' stead.")), Plaintiffs' allegations are wholly speculative.   As stated above, while there is no "probability requirement at the pleading stage," Twombly, 550 U.S. at 556, "something beyond . . . mere possibility . . . must be alleged." Id. at 558 (citing Dura Pharm., 544 U.S. at 347).   In any event, as stated above, Plaintiffs have asserted no allegations that any business opportunities were obtained *through any threats* made by Defendant.

42

at 28.) The Court has already rejected this argument. See supra pp. 23-26. At the very least, one can reasonably infer from the facts alleged in the complaint that an employee or agent, acting at the direction of Defendant, entered Plaintiff Bowers' office with the intent to unlawfully obtain confidential business information. Once again, the Court points out that the burglary accusation is factually supported by Plaintiffs' assertion, in the police report attached to the complaint, that Defendant's attorney appeared at the Utah proceedings with documents that could only have been obtained by someone who had access to Plaintiff Bowers' office.

Despite the fact that Plaintiffs have sufficiently pled the RICO predicate acts of burglary and violations of the Georgia Computer Systems Protection Act, Plaintiffs still have failed to state a claim under the Georgia RICO Act. The burglary and computer crimes, as alleged, involve a single transaction. The Georgia Court of Appeals has stated the following with regard to this particular issue: "The fact that elements of two crimes may have been present at two separate points in time does not create two predicate acts out of what is in reality a single transaction." Stargate Software Int'l, Inc. v. Rumph, 224 Ga. App. 873, 877 (1997); see also Rosen v. Protective Life Ins. Co., No. 1:09-cv-

03620, 2010 WL 2014657, at *6 (N.D. Ga. May 20, 2010) ("For any racketeering claim, there must be a pattern. Two acts associated with the same transaction do not convert the event into a racketeering pattern."); Chemtura, 297 Ga. App at 292-93 (dismissing plaintiffs' civil RICO claims because predicate acts alleged were based on a single transaction). In Stargate, the plaintiff alleged that the defendants had committed two or more predicate acts of conversion, computer theft, or computer trespass, by taking computers, data, and records, and then, at a separate time, using and altering them to the plaintiff's detriment. 224 Ga. App. at 877. The court in that case found that the plaintiff's RICO claim failed because the predicate acts alleged involved only a single transaction. Id. at 877-78. Similarly, in this case, the remaining predicate acts relate to a single transaction—the alleged burglary of Plaintiff Bowers' office. Thus, the RICO claim should be dismissed for failure to establish the necessary predicate acts. With regard to this claim, Defendant's motion to dismiss is **GRANTED**.

## IV. PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT

On September 28, 2009, Plaintiffs filed a motion for declaratory judgment. (Doc. no. 21.) In their motion, Plaintiffs seek a "declaration of [their] rights" with

respect to the following: (1) That there is no basis for Defendant to sue Dial HD; (2) That assuming, *arguendo*, Defendant in fact has any claims to bring against Dial HD, it should bring these claims in a timely manner and without further delay; and (3) That if Defendant was to file such an action, jurisdiction and venue would be proper in the Southern District of Georgia, Augusta Division. (Id. at 4-5.) Defendant has responded in opposition to Plaintiffs' motion (doc. no. 29), and Plaintiffs have filed a reply brief (doc. no. 33). The Court has reviewed all briefs filed in support and opposition of this motion and finds that Plaintiffs' motion (doc. no. 21) is completely without merit and is hereby summarily **DENIED**.

## V. CONCLUSION

Upon the foregoing, Plaintiffs' motion to amend their complaint (doc. no. 15) is **MOOT**. Plaintiffs' amended complaint shall be deemed filed as of the date they filed their motion to amend. Thus, the **CLERK** is **DIRECTED** to file, *nunc pro tunc*, Plaintiffs' amended complaint (doc. no. 15, Ex. 2) as a stand-alone entry. Defendant is hereby granted leave to file an answer to Plaintiffs' amended complaint within twenty-one (21) days of the entry of this Order. Further, the parties shall also submit to the Court, within

twenty-one (21) days, a proposed revised joint scheduling order. Upon review of the joint proposal, an order will be entered setting the remaining deadlines in the case.

Defendant's motion to change venue (doc. no. 11) and its motion to stay this action (doc. no. 11) are **DENIED**. Defendant's motion to dismiss (doc. no. 10) is **GRANTED IN PART AND DENIED IN PART**, as set forth in this Order. Defendant's motion to stay all pretrial and discovery deadlines (doc. no. 31) is rendered **MOOT**. Plaintiffs' motion for declaratory judgment (doc. no. 21) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia this _7th_ day of September, 2010.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA